## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DOROTHY JOHNSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-3290 c/w 15-3314; 15-3315; 15-3318; 15-3319; 15-3320; 15-3321; 16-14271; and 16-14393** |
| **CLARK GIN SERVICE, INC., et al.** | **SECTION: "G"(5)** |

### ORDER

In this litigation, Plaintiffs in nine actions, which have been consolidated for all purposes, bring claims against Defendants National Railroad Passenger Corporation ("Amtrak"), Clark Gin Service, Inc. ("Clark Gin"), State Farm Mutual Automobile Insurance Company ("State Farm"), and Illinois Central Railroad Company ("Illinois Central") for injuries sustained during a collision between an Amtrak train and a tractor-trailer. Pending before the Court is Amtrak's "Motion to Determine Conflict-Free Representation." [1] Having reviewed the motion, the memoranda in support, the memorandum in opposition, the record, and the applicable law, the Court will grant Amtrak's motion.

### I. Background

#### A.    *Factual Background*

This litigation arises out of an accident that occurred on September 10, 2013, at a railroad crossing near Tchula, Mississippi. [2] At that time, Amtrak Train No. 59, also known as "The City of New Orleans," collided with a tractor-trailer operated by Alvin W. Yeates, a driver for Clark

---

[1] Rec. Doc. 44.

[2] *See* Rec. Doc. 1 at 3.

Gin.[3] Plaintiff Brett Kern was a locomotive engineer aboard the train,[4] and Plaintiff Morgan was a conductor at the time of the accident.[5] Plaintiffs Dorothy Johnson, Vincent Dorest, Enrique Mayes, Cheryl Rainey, Kytosha Wilson, and Gene Benefield were service crew members aboard Amtrak Train No. 59 at the time of the accident,[6] and Plaintiff Arnold Murphy was a passenger.[7]

**B.      *Procedural Background***

On August 6, 2015, Plaintiff Johnson filed the first complaint in this action.[8] Plaintiffs Dorest, Mayes, Rainey, Benefield, Wilson, and Kern also filed complaints against Defendants on August 6, 2015.[9] Plaintiff Murphy filed a complaint against Defendants on August 30, 2016,[10] and on September 1, 2016, Plaintiff Morgan filed the final complaint in this litigation.[11] In nearly identical complaints, Plaintiffs Johnson, Dorest, Mayes, Rainey, Benefield, Wilson, and Kern, all Amtrak employees, bring claims against Amtrak pursuant to the Federal Employer's Liability Act, 45 U.S.C. §51, *et seq.* ("FELA"),[12] alleging that the injuries and damages they sustained on

---

[3] *Id.*

[4] *Kern v. Clark Gin Service, Inc., et al.*, Case No. 15-3321, Rec. Doc. 1 at 2.

[5] *Morgan v. Clark Gin Service, Inc., et al.*, Case No. 16-14393, Rec. Doc. 1 at 2.

[6] *See* Rec. Doc. 1; *Dorest v. Clark Gin Service, Inc., et al.*, Case No. 15-3314, Rec. Doc. 1; *Mayes v. Clark Gin Service, Inc., et al.*, Case No. 15-3315, Rec. Doc. 1; *Rainey v. Clark Gin Service, Inc., et al.*, Case No. 15-3318, Rec. Doc. 1; *Benefield v. Clark Gin Service, Inc., et al.*, Case No. 15-3319, Rec. Doc. 1; *Wilson v. Clark Gin Service, Inc., et al.*, Case No. 15-3320, Rec. Doc. 1.

[7] *Murphy v. Clark Gin Service, Inc., et al.*, Case No. 15-14271, Rec. Doc. 1.

[8] Rec. Doc. 1.

[9] *Dorest v. Clark Gin Service, Inc., et al.*, Case No. 15-3314, Rec. Doc. 1; *Mayes v. Clark Gin Service, Inc., et al.*, Case No. 15-3315, Rec. Doc. 1; *Rainey v. Clark Gin Service, Inc., et al.*, Case No. 15-3318, Rec. Doc. 1; *Benefield v. Clark Gin Service, Inc., et al.*, Case No. 15-3319, Rec. Doc. 1; *Wilson v. Clark Gin Service, Inc., et al.*, Case No. 15-3320, Rec. Doc. 1.

[10] *Murphy v. Clark Gin Service, Inc., et al.*, Case No. 15-14271, Rec. Doc. 1.

[11] *Morgan v. Clark Gin Service, Inc., et al.*, Case No. 16-14393, Rec. Doc. 1.

[12] *See, e.g.*, Rec. Doc. 1 at 4–5.

September 10, 2013, were due "in whole or in part to the negligence of Defendant Amtrak, its agents, servants or employees acting in the course and scope of their employment."[13] These seven employee Plaintiffs also bring claims for negligence against Clark Gin and its insurer State Farm.[14]

Plaintiff Morgan, also an Amtrak employee, brings claims pursuant to FELA, alleging that the injuries he sustained on September 10, 2013, were due in whole or in part to the negligence of Amtrak.[15] Plaintiff Morgan also alleges claims for negligence against Clark Gin, State Farm, and Illinois Central, the company responsible for maintaining the tracks and crossing where the accident occurred.[16] In his complaint, Plaintiff Murphy, a passenger on Amtrak Train No. 59, brings negligence claims against Clark Gin and State Farm.[17] Passenger Plaintiff Murphy also brings negligence claims against Amtrak, alleging that acts of negligence "were committed by employees, agents, and/or representatives of Defendant Amtrak, while acting in the course and scope of their employment, thereby rendering Defendant Amtrak vicariously liable under the theory of *respondeat superior*."[18]

Eight of the nine Plaintiffs in this action, employee Plaintiffs Benefield, Dorest, Johnson, Kern, Mayes, Rainey, and Wilson and passenger Plaintiff Murphy, are represented by Blake G. Arata, Jr., C. Perrin Rome, III and William Chad Stelly of Rome, Arata & Baxley, L.L.C. ("Rome

---

[13] *Id.* at 5.

[14] *Id.* at 4.

[15] *Morgan v. Clark Gin Service, Inc., et al.*, Case No. 16-14393, Rec. Doc. 1 at 3–4.

[16] *Id.* at 5–9.

[17] *Murphy v. Clark Gin Service, Inc., et al.*, Case No. 16-14271, Rec. Doc. 1 at 3–4.

[18] *Id.* at 5.

Arata"), as well as Dane S. Ciolino of Dane S. Ciolino, L.L.C.[19]  The remaining Plaintiff, Plaintiff Morgan, is represented by Carisa German-Oden, Benjamin B. Saunders, and Joseph M. Miller of Davis, Saunders, Miller & Oden, P.L.C.[20]

The first seven cases in this litigation were consolidated for discovery purposes on December 11, 2015,[21] and consolidated for all purposes on March 24, 2016.[22]  The two most recent cases were consolidated for all purposes on October 6, 2016.[23]  On October 17, 2016, Defendant Amtrak filed the instant motion to disqualify Plaintiffs Benefield, Dorest, Johnson, Kern, Mayes, Murphy, Rainey, and Wilson's counsel (collectively "Plaintiffs' counsel") due to a conflict of interest.[24]  Plaintiffs Benefield, Dorest, Johnson, Kern, Mayes, Murphy, Rainey, and Wilson (collectively "Plaintiffs") filed an opposition to the motion on November 1, 2016.[25]  On November 7, 2016, with leave of the Court, Defendant Amtrak filed a reply.[26]

## II. Parties' Arguments

### A.    *Amtrak's Arguments in Support of the Motion*

Amtrak argues that Plaintiffs' counsel should be disqualified, because there exist concurrent conflicts of interest in counsel's joint representation of eight Plaintiffs in this

---

[19] *See* Rec. Doc. 52 at 4.

[20] *See Morgan v. Clark Gin Service, Inc., et al.*, Case No. 16-14393, Rec. Doc. 1 at 10.

[21] Rec. Doc. 18.

[22] Rec. Doc. 22.

[23] Rec. Doc. 38.

[24] Rec. Doc. 44.

[25] Rec. Doc. 52. Plaintiff Morgan did not file an opposition to the instant motion.

[26] Rec. Doc. 59.

litigation.[27]  Amtrak asserts that employee Plaintiff Johnson testified in her deposition that Amtrak's failure to warn her that the train was going into the emergency brake application was the only reason she felt that Amtrak was at fault in the September 10, 2013, accident.[28]  Moreover, Amtrak asserts that Plaintiff Kern, the engineer who was operating the train at the time of the accident, testified that he had the capability of providing a warning to the conductor who could then warn the crew and passengers that the train was going into emergency but that he did not do so.[29]  Additionally, according to Amtrak, Plaintiff Kern testified that there were some unsafe conditions at the crossing on the day of the accident and that he never reported his concerns about the crossing to anyone at Amtrak.[30]

Next, Amtrak asserts that the employee Plaintiffs each allege that Amtrak created or permitted dangers to exist in the train's path and failed to properly warn them of dangers at the crossing.[31]  Even though Plaintiff Kern acknowledged that he was the only person at Amtrak who would have had knowledge of the truck being in the train's path on the day of the accident, Amtrak argues, he "curiously" makes the same claims as the other employee Plaintiffs that Amtrak permitted dangers or hazards to exist in the train's path and failed to properly warn him of dangers at the crossing.[32]  In effect, Amtrak argues, six of the employee Plaintiffs are all alleging that Amtrak is vicariously liable based upon the negligent actions and/or inactions of engineer Plaintiff

---

[27] Rec. Doc. 44-1 at 7.

[28] *Id.* at 2 (citing 44-2 at 3–4).

[29] *Id.* at 3 (citing 44-3 at 5).

[30] *Id.* at 3–4 (citing 44-3 at 8).

[31] *Id.* at 3.

[32] *Id.*

Kern.[33]  Moreover, Amtrak argues, passenger Plaintiff Murphy is alleging that Amtrak is vicariously liable based upon the negligent actions and/or inactions of engineer Plaintiff Kern and service crew member Plaintiffs Johnson, Dorest, Mayes, Rainey, Wilson, and Benefield.[34]

Amtrak notes that although Plaintiffs have not specifically named the individuals through whom Amtrak may be vicariously liable, it is abundantly clear that Plaintiffs' failure to warn claims will "turn on Kern's actions or inactions as the train engineer."[35]  Moreover, Amtrak argues, it is likely that the employee Plaintiffs will be identified as the employees related to passenger Plaintiff Murphy's allegations that Amtrak failed to provide reasonably safe transportation, failed to warn its passengers of an impending collision, and failed to provide reasonable assistance to its passengers immediately prior to and at the time of the collision.[36]  Thus, Amtrak argues, Plaintiffs' counsel's representation of the employee Plaintiffs and passenger Plaintiff in this matter is conflicted.[37]

Amtrak argues that although it brings its motion as a third party to the relationship between Plaintiffs and their counsel, the Court has the authority to review this conflict pursuant to the "narrow exception" established by the Fifth Circuit's decision in *In re Yarn Processing Patent Validity Litigation*.[38]  Amtrak argues that a district court is obliged to take measures against unethical conduct occurring in connection with any proceedings before it, but that it should not

---

[33] *Id.* at 4.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.* at 5 (citing 530 F.2d 83, 88–89 (5th Cir. 1976)).

impose the sanction of disqualification cavalierly.[39] Amtrak asserts that disqualification motions are governed by "state and national ethical standards adopted by the court,"[40] and that courts in the Fifth Circuit look to the norms embodied in the American Bar Association (ABA) Model Rules and the Model Code for the national standards applicable to disqualification motions.[41] The Eastern District of Louisiana, Amtrak further asserts, has adopted the Louisiana State Bar Association's Rules of Professional Conduct, which are identical to the ABA's Model Rules of Professional Conduct.[42]

Amtrak argues that ABA Model Rule of Professional Conduct 1.7 provides the circumstances in which an attorney is conflicted in his or her representation of a current client and that those circumstances apply here.[43] First, Amtrak contends that there is a potential for a direct conflict as described in Rule 1.7(a)(1), because counsel for Plaintiff Kern is also representing the other employee Plaintiffs and passenger Plaintiff Murphy, who all bring negligence claims based on Amtrak's failure to warn.[44] This conflict became clear, Amtrak argues, when Plaintiff Kern testified in his deposition that he believed there were potential dangers at the railroad crossing and that he failed to report them to anyone at Amtrak.[45] Amtrak argues that this testimony reveals the

---

[39] *Id.* (quoting *Nagle v. Gusman*, 2015 WL 1525827, *4 (E.D. La. April 2, 2015) (citing *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299–300 (5th Cir. 2009) (internal quotations omitted)).

[40] *Id.* (quoting *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311–12 (5th Cir. 1995) (citing *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992)).

[41] *Id.* at 6.

[42] *Id.* (citing Local Civ. Rule 83.2.3).

[43] *Id.*

[44] *Id.* at 7.

[45] *Id.* (citing 44-2 at 8).

potential conflicts, because Plaintiff Kern's testimony suggests that he, "in his individual capacity, is the potential source of the liability."[46]  As a result, Amtrak argues, Plaintiffs' counsel has a direct conflict because decisions made about the representation of Plaintiff Kern could adversely impact the representation of the other employee Plaintiffs and passenger Plaintiff.[47]

Moreover, Amtrak argues that Plaintiff Johnson, an employee Plaintiff, stated in her deposition that her claim against Amtrak was premised on its failure to warn her that the train was going into emergency mode, and Plaintiff Kern testified that he had the capacity to give such a warning and did not.[48]  In effect, Amtrak contends, Plaintiff Johnson is asserting a claim against Plaintiff Kern, and their counsel is, thus, representing clients with directly adverse interests.[49]  Likewise, because passenger Plaintiff Murphy is alleging fault against Amtrak that could hinge on the acts of Plaintiff Kern and the other Amtrak employee Plaintiffs, the representation of Plaintiff Murphy also presents a direct conflict between the interests of employee Plaintiffs and passenger Plaintiff Murphy.[50]

Next, Amtrak argues that under Model Rule 1.7(a)(2), Plaintiffs' counsel will be "materially limited because any decisions about Plaintiff Kern's case could impact and limit their responsibilities" to the employee Plaintiffs and passenger Plaintiff.[51]  Amtrak asserts that the comments to the Model Rules of Professional Conduct provide an example of a Rule 1.7(a)(2)

---

[46] *Id.*

[47] *Id.*

[48] *Id.* at 8.

[49] *Id.*

[50] *Id.* at 8–9.

[51] *Id.* at 9.

"material limitation" in which there is "simultaneous representation of parties whose interests in litigation may conflict, such as co-plaintiffs or co-defendants."[52] Here, Amtrak argues, Plaintiffs are being treated like co-plaintiffs since all of the claims have been consolidated for the purposes of discovery and trial.[53] Because the Plaintiffs could be adverse to one another in establishing their cases, Amtrak argues, Plaintiffs' counsel will be materially limited in their responsibilities to each individual client.[54]

Amtrak asserts that the potential conflict is "nonconsentable," because under Model Rule 1.7(b)(3), it is not possible for a client to consent to representation despite the presence of a conflict where clients are aligned directly against each other in the same litigation.[55] Even where there is not direct adverseness, Amtrak argues, a conflict of interest exists if there is a significant risk that "a lawyer's ability to consider, recommend, or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests" regarding other clients.[56] Here, Amtrak avers, Plaintiffs' counsel would be limited in the representation of each Plaintiff because counsel would not be able to vigorously develop each Plaintiff's case without adversely affecting the other Plaintiffs.[57]

Amtrak also notes that the Louisiana State Bar Association Rules of Professional Conduct Committee has issued a public opinion advising that simultaneous representation of a driver and

---

[52] *Id.* (quoting Model Rules of Prof'l Conduct R. 1.7, cmt. 23 (2016)).

[53] *Id.*

[54] *Id.* at 10.

[55] *Id.* (citing Model Rules of Prof'l Conduct R. 1.7, cmt. 17).

[56] *Id.* (citing Model Rules of Prof'l Conduct R. 1.7, cmt. 8).

[57] *Id.*

guest-passenger in an automobile accident should generally be avoided because of the potential for conflicts to arise.[58] Amtrak argues that simultaneous representation of a driver and guest passenger is "certainly analogous" to the representation of a locomotive engineer of a train and the crew and passengers of that train.[59] As the Committee predicted would happen in cases like this, Amtrak contends, the crew member Plaintiffs and passenger Plaintiff have alleged claims against Amtrak based upon the actions and/or inactions of engineer Plaintiff Kern.[60]

Amtrak next argues that the Court should examine the social interests at stake in this case. According to Amtrak, the Court should determine "whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case."[61] Amtrak asserts that it will be confusing for a jury to hear allegations of Amtrak's negligence based upon the actions or inactions of some of the Plaintiffs themselves.[62] Amtrak further argues that Plaintiffs' counsel will have more access to the witnesses Amtrak needs to support its defenses and that there is a possibility that "Plaintiffs' counsel will not cooperate with Amtrak because it could have an adverse effect on their own case and that of the other aligned plaintiffs."[63]

There would be no need to suspect any impropriety, Amtrak alleges, if Plaintiffs were

---

[58] *Id.* at 10–11 (citing LSBA Rules of Prof'l Conduct Comm., Public Op. 08-RPCC-016 (2008)).

[59] *Id.* at 11.

[60] *Id.*

[61] *Id.* (citing *In re Dresser Industries, Inc.*, 972 F.2d 540, 544 (5th Cir. 1992)).

[62] *Id.* at 12.

[63] *Id.*

represented by separate counsel.[64]  Moreover, given that the Court scheduled a status conference
with the parties to select a new trial date and cutoff times on October 18, 2016, Amtrak asserts that
no party would be prejudiced by obtaining new counsel at this time.[65]  Finally, Amtrak asserts that
it did not file a motion to disqualify Plaintiffs' counsel based on the pleadings of the employee
Plaintiffs alone but that the deposition testimony of Plaintiff Johnson and Plaintiff Kern now makes
clear that "there is a more than reasonable probability that some identifiable impropriety could
actually occur."[66]  Moreover, Amtrak argues that Plaintiff Murphy's complaint implicates the
actions of both Plaintiff Kern and the other employee Plaintiffs.[67]  As a result, Defendant Amtrak
avers that the Court should disqualify Plaintiffs' counsel from this action.[68]

## B.    *Plaintiffs' Arguments in Opposition to the Motion*

In their opposition, Plaintiffs argue that Amtrak's motion to disqualify Plaintiffs' counsel
is based on "fundamentally wrong factual assumptions" and should be denied.[69]  Plaintiffs agree
that under Louisiana Rule of Professional Conduct 1.7, a concurrent conflict exists if either: "(1)
the representation of one client will be directly adverse to the another client; or (2) there is a
significant risk that the representation of one or more clients will be materially limited by the
lawyer's responsibilities to another client . . . ."[70]

---

[64] *Id.*

[65] *Id.*

[66] *Id.* (citing *Woods v. Covington City Bank*, 537 F.2d 804, 813 (5th Cir. 1976)).

[67] *Id.*

[68] *Id.* at 13.

[69] Rec. Doc. 52 at 2.

[70] *Id.* (citing La. Rules of Prof'l Conduct R. 1.7(a)).

First, Plaintiffs argue that none of Plaintiffs' counsel's clients in this matter are directly adverse to any of the other clients.[71]  According to Plaintiffs, they are only suing Clark Gin, State Farm, and Amtrak, and no Plaintiff has sued any other Plaintiff.[72]  Moreover, according to Plaintiffs, no Plaintiff has made any factual allegation in a complaint or elsewhere that any other client of counsel was "negligent or otherwise at fault in connection with the crossing accident."[73]  Thus, according to Plaintiffs, none of the Plaintiffs are directly adverse to each other.[74]

Second, Plaintiffs argue that there is not a significant risk that counsel's representation of any of the Plaintiffs in this matter will materially limit their representation of the other Plaintiffs they represent.[75]  This is so, Plaintiffs argue, because there has been no evidence that any of the Plaintiffs were negligent in connection with the September 10, 2013, crossing accident.[76]  Moreover, Plaintiffs argue that none of them are alleging or asserting claims of negligence against any Amtrak employee aboard the train and that each of them has given "informed consent to not [sue]" any Amtrak employee aboard the train.[77]  To support this assertion, Plaintiffs cite to Plaintiffs' attorney Blake G. Arata's affidavit in which Arata represents that he has spoken with each of his clients and that each of his clients has affirmed that he or she is not alleging claims of negligence against any other employee aboard the train and that he or she has given informed

---

[71] *Id.*

[72] *Id.*

[73] *Id.* at 2–3.

[74] *Id.* at 3.

[75] *Id.*

[76] *Id.* (citing 52-1 at 2).

[77] *Id.*

consent to not sue any other Amtrak employee aboard the train at the time of the accident.[78] Finally, Plaintiffs assert that counsel for Amtrak wrote in an email: "I did not say there was any evidence of negligence on the part of Mr. Kern or other Amtrak employees represented by Rome Arata . . . ."[79] Plaintiffs argue that there is no concurrent conflict of interest, because counsel's clients are not suing one another and there is no evidence that any of them were negligent.[80] As a result, Plaintiffs argue, Amtrak's motion should be denied.[81]

## C.    *Amtrak's Reply in Support of the Motion*

In its reply, Amtrak argues that Plaintiffs' opposition is based on counsel's "self-serving affidavit that is inconsistent with his clients' sworn testimony . . . ."[82] Amtrak further avers that Plaintiffs' assertion that none of them are adverse to the other Plaintiffs represented by the same counsel is misguided.[83] Although Plaintiffs did not directly name each other as defendants in their respective complaints, Amtrak argues, each of them is alleging that Amtrak is vicariously liable for its employees' actions.[84] Amtrak contends that it is "abundantly clear" which Amtrak employees' actions will be evaluated to determine Amtrak's negligence.[85] Moreover, Amtrak asserts, because the majority of the actions consolidated in this case are FELA claims, any

---

[78] *Id.* (citing 52-1 at 2).

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] Rec. Doc. 59 at 2.

[83] *Id.*

[84] *Id.*

[85] *Id.*

proportion of negligence that a jury may attribute to any of the FELA Plaintiffs will proportionally serve to reduce that Plaintiff's recovery.[86]

Amtrak asserts that Plaintiff Kern testified that he had the capability to issue a warning that he was putting the train in emergency mode but that he failed to do so because he did not have enough time.[87] Consequently, Amtrak argues, the jury will have to weigh whether Plaintiff Kern had enough time to give a warning.[88] According to Amtrak, this evidence will support Plaintiff Johnson's claim for Amtrak's failure to warn and will influence an assessment of Plaintiff Kern's contributory negligence.[89] As a result, Amtrak avers, either Plaintiff Kern or Plaintiff Johnson will "suffer a diminution in their recovery at the hands of their own counsel," because counsel's defense of Plaintiff Kern would be detrimental to the other Plaintiffs' failure to warn claims against Amtrak.[90] Similarly, according to Amtrak, evidence of Amtrak's vicarious liability via the actions of the employee Plaintiffs will be presented to support passenger Plaintiff Murphy's negligence claims.[91] Amtrak contends that this will present a conflict and "confuse the jury as to whom Plaintiffs' counsel is representing."[92]

Amtrak next argues that Plaintiffs' attorney Blake G. Arata's "self-serving affidavit" should not be considered by the Court, because it cannot be used to rebut the sworn testimony of

---

[86] *Id.* (citing *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 159–60 (2007); Fifth Circuit Pattern Jury Instructions, Rule 5.1).

[87] *Id.* (citing Rec. Doc. 44-1 at 3 n.7–8).

[88] *Id.*

[89] *Id.* at 2–3.

[90] *Id.* at 3.

[91] *Id.*

[92] *Id.*

Plaintiffs Johnson and Kern.[93] Under Fifth Circuit precedent, Amtrak asserts, the Court should consider whether a cited affidavit contradicts or enhances the deposition testimony.[94] Amtrak alleges that Arata seeks to represent in the affidavit that Plaintiffs are not asserting claims against Amtrak employees who were on the train at issue in this case and that counsel sought and received consent from Plaintiffs to not assert allegations against Amtrak employees who were on the train at issue.[95] These representations, Amtrak argues, present conflicting testimony from Plaintiffs' counsel about Plaintiffs' intent.[96] If it is improper for a deponent to use a "sham affidavit" to contradict his or her own deposition testimony, Amtrak avers, Plaintiffs' counsel cannot use such an affidavit to contract counsel's clients' sworn deposition testimony.[97]

Next, Amtrak argues that Plaintiffs' attorney Arata's assertion that he has spoken with his clients and that each of them has agreed to not sue other employee Plaintiffs is the "type of inappropriate informed consent" that the Louisiana State Bar Association, Rules of Professional Conduct Committee was speaking of in its opinion about potential conflicts arising from the concurrent representation of a passenger and a driver in a car accident.[98] Moreover, Amtrak argues, without submitting the actual written informed consents of each Plaintiff, the Court is not able to ascertain whether Plaintiffs have provided truly informed consent as contemplated in Model

---

[93] *Id.*

[94] *Id.* at 4 (citing *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495–96 (5th Cir. 1996) (citing *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 137 n.23 (5th Cir. 1992)).

[95] *Id.*

[96] *Id.*

[97] *Id.*

[98] *Id.* at 4–5 (citing LSBA Rules of Prof'l Conduct Comm., Public Op. 08-RPCC-016 (2008)).

Rule of Professional Conduct 1.7.[99] Amtrak contends that Plaintiffs' counsel's assertion that Amtrak has not admitted to negligence is irrelevant to the issue of whether a conflict exists.[100] Amtrak asserts that it did inform Plaintiff's counsel that "individuals represented by Rome Arata have made allegations of negligence against Amtrak for negligent acts or omissions of other individuals represented by Rome Arata."[101] Finally, Amtrak notes that attorney Dane S. Ciolino has enrolled as counsel for the eight Plaintiffs represented by law firm Rome Arata, "as opposed to representing Rome Arata for the limited purpose of appearing for this Motion to Determine Conflict-Free Representation."[102] Because, Amtrak asserts, attorney Ciolino has elected to enroll as counsel for Plaintiffs, "if he now attempts to argue on behalf of Rome Arata to the detriment of plaintiffs, Dane S. Ciolino too would have a Rule 1.7 conflict."[103]

### III. Law and Analysis

**A.** *Legal Standard for Attorney Disqualification*

Motions to disqualify counsel are governed by state and national ethical standards adopted by the Court.[104] Ethical canons relevant to a motion to disqualify include: (1) the local rules of the district court; (2) the American Bar Association ("ABA")'s Model Rules of Professional Conduct; (3) the ABA's Model Code of Professional Responsibility[105]; and (4) the forum state's rules of

---

[99] *Id.* at 5 (citing ABA Model Rules of Prof'l Conduct R. 1.7(b)(4), cmt. 20).

[100] *Id.*

[101] *Id.* (citing Rec. Doc. 52-1 at 4).

[102] *Id.*

[103] *Id.* (citing Rec. Doc. 51) ("*Ex Parte*/Consent Motion to Enroll as Additional Counsel of Record Dane Ciolino").

[104] *Horaist v. Doctor's Hosp.*, 255 F.3d 261, 266 (5th Cir. 2001) (citing *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311 (5th Cir. 1995)).

[105] The ABA Model Code of Professional Responsibility was "effectively superseded" by the ABA Model

attorney conduct.[106] In the Fifth Circuit, motions to disqualify are treated as substantive motions affecting the rights of the parties.[107] Although federal courts are free to adopt the state or ABA Model Rules as their ethical standards, the question of whether and how these rules are to be applied are questions of federal law.[108] Motions to disqualify, therefore, are determined by applying standards developed under federal law.[109]

A district court is "obliged to take measures against unethical conduct occurring in connection with any proceeding before it."[110] However, "depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration."[111] In considering a motion for disqualification, the applicable rules and standards are viewed in light of both the litigant's right to counsel of his or her own choosing and the public interest, considering also the appearance of impropriety in general, the possibility that a specific impropriety will occur, and whether the likelihood of public suspicion from any appearance of impropriety outweighs any social interest served by the lawyer's continued

---

Rules of Professional Conduct when they were adopted in 1983. *Brennan v. Brennan*, No. 13-2491, 2013 WL 1897126, *2 n.11 (E.D. La. May 6, 2013) (citing *CEF Funding, LLC v. Sher Garner Cahill Richter Klein & Hebert, LLC*, No. 09-6623, 2010 WL 2773116, *1 n.11 (E.D. La. July 9, 2010)).

[106] *Id.*

[107] *In re Am. Airlines, Inc.*, 972 F.2d 604, 610 (5th Cir. 1992).

[108] *Id.*

[109] *Id.* (citing *In re Dresser Indus., Inc.*, 972 F.2d 540, 544 (5th Cir. 1992)).

[110] *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976). *See also In re Am. Airlines*, 972 F.2d at 611 ("[A] motion to disqualify counsel is the proper method for a party-litigant to bring the issues of conflict of interest or breach of ethical duties to the attention of the court.") (citing *Muicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir. 1980) (internal quotations omitted).

[111] *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1313 (5th Cir. 1995).

representation in the case.[112] District courts in the Eastern District of Louisiana have recognized that the party seeking disqualification bears the burden of proving a conflict.[113] The Fifth Circuit has held that in reviewing a district court's grant or denial of a disqualification motion, it will "review fact-findings for clear error" and "perform a 'careful examination,' or *de novo* review, of the district court's application of the relevant rules of attorney conduct."[114]

The United States District Court for the Eastern District of Louisiana has adopted the Rules of Professional Conduct adopted by the Supreme Court of the State of Louisiana.[115] Louisiana Rule of Professional Conduct 1.7, entitled "Conflict of Interest: Current Clients," provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involved a concurrent conflict of interest. A concurrent conflict of interest exists if:
>> (1) the representation of one client will be directly adverse to another client; or
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibility to another client, a former client, or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>> (2) the representation is not prohibited by law;

---

[112] *Horaist v. Doctor's Hospital of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001) (citing *In re Dresser Indus.*, 972 F.2d 540, 543 (5th Cir. 1992); *see also Douglass v. Valteau*, No. 5-662, 2005 WL 1431510, *1 (E.D. La. June 9, 2005) (Wilkinson, Mag.).

[113] *See, e.g.*, *Robertson v. AstraZeneca Pharaceuticals, LP*, No. 15-438, 2015 WL 5774774, *2 (E.D. La. Sept. 30, 2015) (Barbier, J.); *Babineaux v. Foster*, No. 04-1679, 2005 WL 711604, *2 (E.D. La. Mar. 21, 2005) (Africk, J.); *Parker v. Rowan Companies, Inc.*, No. 03-545, 2003 WL 22208569, *8 (E.D. La. Sept. 23, 2003) (Knowles, Mag.).

[114] *FDIC*, 50 F.3d at 1311 (holding that the proper standard of review for disqualification rulings is an abuse of discretion standard, but that "in applying this standard, we will review fact-findings for clear error, and we will perform a careful examination, or *de novo* review, of the district court's application of the relevant rules of attorney conduct."). *See also In re ProEducation Intern., Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) (same).

[115] L.R. 83.2.3. Louisiana Rule of Professional Conduct 1.7 (Conflict of Interest: Current Clients) is identical to the ABA Model Rule of Professional Conduct 1.7 (Conflict of Interest: Current Clients).

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.[116]

Thus, in applying Rule 1.7 to the instant case, the Court first considers whether there is either direct adversity between two or more Plaintiffs or a significant risk of material limitation on counsel's advocacy due to counsel's relationship with multiple clients.[117] Then, if there is a conflict, the Court must determine if the conflict could be consented to.[118] Finally, if the conflict could be consented to, the Court must determine whether or not there was informed consent given by all affected Plaintiffs.[119] The Court must also take into account social interests and whether the likelihood of public suspicion from impropriety outweighs any social interest served by the lawyer's continued representation in the case.[120]

## B.    *Analysis*

Amtrak argues that Plaintiffs' counsel should be disqualified because of a concurrent conflict of interest.[121] Amtrak asserts that the representation of Plaintiff Kern, the engineer on Amtrak Train No. 59 who did not issue a warning before the accident, is directly adverse to the other Plaintiffs and that the representation of passenger Plaintiff Murphy, who is suing Amtrak

---

[116] La. Rules of Prof'l Conduct R. 1.7 (eff. June 2, 2016).

[117] La. Rules of Prof'l Conduct R. 1.7(a).

[118] La. Rules of Prof'l Conduct R. 1.7(b)(1)-(3).

[119] La. Rules of Prof'l Conduct R. 1.7(b)(4).

[120] *Horaist v. Doctor's Hospital of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001) (citing *In re Dresser Indus.*, 972 F.2d 540, 543 (5th Cir. 1992); *see also Douglass v. Valteau*, No. 5-662, 2005 WL 1431510, *1 (E.D. La. June 9, 2005) (Wilkinson, Mag.).

[121] *See* Rec. Doc. 44.

under a theory of vicarious liability, is directly adverse to the employee Plaintiffs.[122]  Amtrak also argues that there is a significant risk that the representation of Plaintiff Kern will be materially limited by counsel's representation of the other Plaintiffs and that the representation of passenger Plaintiff Murphy will be materially limited by counsel's representation of the employee Plaintiffs.[123]  Finally, Amtrak argues that the conflicts in this case are nonconsentable and that even if they were consentable, Plaintiffs' counsel has not obtained informed consent to representation from each client, confirmed in writing.[124]

Plaintiffs respond that there is no concurrent conflict of interest in this case, because there is no direct adversity between any of counsel's clients in this matter.[125]  Further, Plaintiffs argue that there is not a significant risk that counsel's representation of any Plaintiff in this matter will limit its representation of any of the other Plaintiffs, because there has been no evidence that any of the Plaintiffs were negligent in connection with the crossing accident.[126]  Plaintiffs assert that each Plaintiff has affirmed that he or she is not bringing negligence claims against any other Amtrak employees aboard the train.[127]  Moreover, Plaintiffs assert that each Plaintiff has given informed consent to "not suing" any other Amtrak employees aboard the train at the time of the accident.[128]  The Court will apply Louisiana Rule of Professional Conduct 1.7 and address each of the parties' arguments in turn.

---

[122] Rec. Doc. 44-1 at 4.

[123] *Id.* at 9.

[124] *Id.*

[125] Rec. Doc. 52 at 2.

[126] *Id.* at 3.

[127] *Id.*

[128] *Id.*

### 1.      A Conflict Exists in Counsel's Joint Representation of Plaintiffs

This case does not involve directly adverse representation under Rule 1.7(a)(1), because Plaintiffs' counsel do not represent any of the Plaintiffs in one matter against any of the other Plaintiffs in some other matter, and Defendant Amtrak has not shown that it will be necessary for Plaintiffs' counsel to cross-examine any of its clients.[129] This case does, however, involve a material limitation conflict of interest under Rule 1.7(a)(2).[130] Rule 1.7(a)(2) explains that a concurrent conflict of interest exists where there is a significant risk that the representation of one or more clients will be "materially limited" by the lawyer's responsibilities to another client.[131] Comment 8 to ABA Model Rule 1.7 states that "[e]ven where there is no direct adverseness, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests."[132] Such a conflict "in effect forecloses alternatives that would otherwise be available to the client."[133] The "mere possibility of harm" does not require

---

[129] *See* Model Rules of Prof'l Conduct R. 1.7, cmt. 6 ("[A]bsent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter . . . Similarly, a directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit."). *See also Robertson v. AstraZeneca Pharmaceuticals, LP*, No. 15-438, 2015 WL 5774774, *4 (E.D. La. September 30, 2015) (Barbier, J.) (no direct adversity where law firm did not represent defendant company in a case against other medical practitioner defendants, or vice versa).

[130] *See* Model Rules of Prof'l Conduct R. 1.7 (a)(2) ("A concurrent conflict of interest exists if . . . (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client . . . .").

[131] Model Rules of Prof'l Conduct R. 1.7 (a)(2).

[132] Model Rules of Prof'l Conduct R. 1.7, cmt. 8. *See also* ABA Model Code of Prof'l Responsibility, Ethical Canon 5-1 (1980) ("The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client.").

[133] *Id.*

21

that an attorney disclose a conflict and obtain consent from his or her clients.[134]  Rather, the critical questions are "the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client."[135]  Here, the Court identifies two material limitation conflicts, as described in Rule 1.7(a)(2).

First, Plaintiffs' counsel has undertaken representation of an engineer (Plaintiff Kern), service crew members (Plaintiffs Benefield, Dorest, Johnson, Mayes, Rainey, and Wilson), and a passenger (Plaintiff Murphy).[136]  All of the employee Plaintiffs allege that Amtrak failed to "properly warn" them of the dangers,[137] and passenger Plaintiff Murphy alleges that Amtrak "failed to warn its passengers of an impending collision."[138]  Plaintiff Kern testified in his deposition that he did not give a warning before the train accident occurred because he did not have time.[139]  Plaintiff Johnson testified in her deposition that she believed Amtrak was at fault for the accident, because she did not hear the train go into emergency mode and she "didn't get a warning with the brakes."[140]  Plaintiff Kern has an interest in denying fault for not issuing a warning, because his potential damages award could be reduced for contributory negligence.[141]  On the other hand, the other Plaintiffs have an interest in proving that Amtrak was at fault in failing to give a warning before the collision, and Plaintiff Kern's testimony suggests that his actions or

---

[134]  *Id.*

[135]  *Id.*

[136]  *See* Rec. Doc. 52 at 1.

[137]  *See, e.g.* Rec. Doc. 1 at 5.

[138]  No. 16-14271, Rec. Doc. 1 at 4.

[139]  Rec. Doc. 44-3 at 4.

[140]  Rec. Doc. 44-2 at 4, 6.

[141]  *See Norfolk Southern Ry. Co. v. Sorrell*, 549 U.S. 158, 169–170 (2007).

inactions are relevant to proving that Amtrak was at fault.[142]

A difference of interests is apparent between Plaintiff Kern and the other Plaintiffs represented by Plaintiffs' counsel. Moreover, there is a "significant risk" that Plaintiffs' counsel's "ability to consider, recommend or carry out an appropriate course of action" for each of their clients will be materially limited by obligations to other clients in this action.[143] For example, in considering Plaintiff Kern's interests, counsel may decide not to vigorously attempt to prove that Plaintiff Kern was at fault for failing to issue a warning before the crash, but this could "foreclose a course of action that should reasonably be pursued" on behalf of the other Plaintiffs who are bringing negligence claims based on Amtrak's failure to warn.[144] On the other hand, if counsel were, in considering the other Plaintiffs' interests, to vigorously attempt to prove that Plaintiff Kern was at fault for failing to issue a warning, counsel would do so at the detriment to Plaintiff Kern's interests.

Second, there is a significant risk that Plaintiffs' counsel will be materially limited in their ability to represent passenger Plaintiff Murphy and the employee Plaintiffs simultaneously. This is so, because Plaintiff Murphy alleges that the acts of negligence listed in his complaint were committed "by employees, agents, and/or representatives of Defendant Amtrak, while acting in the course and scope of their employment, thereby rendering Defendant Amtrak vicariously liable under the theory of *respondeat superior*."[145] The employee Plaintiffs were aboard Amtrak Train No. 59 and acting in the course of their employment at the time of the accident, and it is probable that passenger Plaintiff Murphy's interests will require his counsel to prove that the employee

---

[142] *See* Rec. Doc. 44-3 at 4.

[143] *See* Model Rules of Prof'l Conduct R. 1.7 (a)(2).

[144] *See* Model Rules of Prof'l Conduct R. 1.7, cmt. 8.

[145] No. 16-14271, Rec. Doc. 1 at 5.

Plaintiffs breached a duty to him, which would be contrary to the employee Plaintiffs' interests.[146] Because of the conflicting interests of passenger Plaintiff Murphy and the employee Plaintiffs, there is a significant risk that counsel's ability to consider and carry out "an appropriate course of action" for each Plaintiff will be materially limited.[147]

The Fifth Circuit has held that "an actual conflict exists if counsel's introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing."[148] An actual conflict exists here, where the introduction of probative evidence that would significantly benefit one Plaintiff would damage the recovery of another Plaintiff whom the same counsel is representing. Plaintiffs' assertion that there has been no evidence of negligence on the part of any of the Plaintiffs does not change this conclusion.[149] In determining the existence of a conflict, the question is not whether a party's claim is likely to succeed but rather whether an attorney's ability to "recommend or advocate all possible positions" that a client may take would be "materially limited" because of the lawyer's "duty of loyalty" to another client.[150] Here, there is a significant risk that Plaintiffs' counsel will be materially limited in recommending or advocating all possible positions to their clients because of the conflicting interests of the Plaintiffs.[151] Accordingly, the

---

[146] *See American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Soc. of the U.S.*, 841 F.2d 658, 665 (5th Cir. 1988) ("For *respondeat superior* liability to attach, the employee must have breached his duty to a third party while acting in the course and scope of his employment."); *Drummond v. Fakouri*, 30 So.3d 111, 116–117 (La. App. 1 Cir. 12/23/09) ("[A]n employer can be held liable for an employee's tortious conduct only if injuring employee is acting within the course and scope of his employment.") (internal quotations and citations omitted).

[147] *See* Model Rules of Prof'l Conduct R. 1.7, cmt. 8.

[148] *United States v. Rico*, 51 F.3d 495, 509 (5th Cir. 1995) (internal quotations omitted).

[149] *See* Rec. Doc. 52 at 3.

[150] Model Rules of Prof'l Conduct R. 1.7, cmt. 8.

[151] *See id.*

Court finds that a concurrent conflict of interest exists in Plaintiffs' counsel's representation of these eight Plaintiffs in this litigation.

### 2.     The Concurrent Conflicts of Interest are Not Consentable

Having concluded that there exist concurrent conflicts of interest in this case, the Court now considers whether Plaintiffs may consent to representation despite the existence of conflicts of interest. Under Rule 1.7, clients may consent to representation notwithstanding a conflict if all four conditions of Rule 1.7(b) are met.[152] Some conflicts, however, are nonconsentable, meaning that "the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent."[153] First, under paragraph (b)(1), representation may not be consented to if "in the circumstances the lawyer cannot reasonably conclude that the lawyer will be able to provide competent and diligent representation." [154] Second, paragraph (b)(2) provides that representation is nonconsentable where prohibited by law.[155] Third, paragraph (b)(3) states that conflicts are nonconsentable when clients are aligned directly against each other in the same litigation.[156] Fourth, even if the first three requirements of Rule 1.7(b) are met, paragraph (b)(4) requires that each affected client give informed consent to representation, confirmed in writing.[157] When a lawyer represents more than one client, as Plaintiffs' counsel do here, the question of

---

[152] *See* Model Rules of Prof'l Conduct R. 1.7, cmt. 14; *Douglass v. Valteau*, No. 5-662, 2005 WL 1431510, *2 (E.D. La. June 9, 2005) (Wilkinson, Mag.) (Rule 1.7 conflict may be waived if four conditions of 1.7(b) met.); *Brennan v. Brennan*, No. 13-2491, 2013 WL 1897126, *3 (E.D. La. May 6, 2013) (Morgan, J.) (Rule 1.7 conflict cannot be waived where all four 1.7(b) requirements are not met.)

[153] Model Rules of Prof'l Conduct R. 1.7, cmt. 14.

[154] *Id.*

[155] *See* Model Rules of Prof'l Conduct R. 1.7, cmt. 16.

[156] *See* Model Rules of Prof'l Conduct R. 1.7, cmt. 17.

[157] *See* Model Rules of Prof'l Conduct R. 1.7, cmts. 18–20; *Douglass*, 2005 WL 1431510, at *2.

consentability must be resolved as to each client.[158]

Here, because of the serious and unavoidable conflicts of interest presented by the representation of Plaintiffs, a lawyer could not "reasonably conclude" that he or she would be able to provide "competent and diligent representation" to all of the Plaintiffs in this case, as required under paragraph (b)(1). [159] Although Plaintiffs correctly note that none of the Plaintiffs individually name any of the other Plaintiffs in their respective complaints, this does not change the fact that in the context of this proceeding, proving certain Plaintiff's claims will necessarily be adverse to the interests of other Plaintiffs represented by Plaintiffs' counsel in the same litigation.[160] This indicates that a reasonable lawyer would conclude that it was not possible to competently and diligently represent each of the Plaintiff's interests.[161] Paragraph (b)(2) does not bar representation, as there is no applicable statute or decisional law barring Plaintiffs' consent to representation.[162]

It is probable, however, that the passenger Plaintiff and employee Plaintiffs are aligned directly against each other under paragraph (b)(3). "Whether clients are aligned directly against each other within the meaning of this paragraph requires examination of the context of the proceeding." [163] Although Plaintiffs do not specifically name each other in their complaints, Plaintiffs' counsel's representation in this litigation involves "the assertion of a claim by one client

---

[158] *Id.*

[159] Model Rules of Prof'l Conduct R. 1.7 (b)(1).

[160] *See* Model Rules of Prof'l Conduct R. 1.7, cmt. 23.

[161] *See Denero v. Palm Horizons Management, Inc.*, No. 2013-73, 2015 WL 5012126, *8 (D.V.I. Aug. 21, 2015) (finding under identical concurrent conflicts of interest rule that reasonable lawyer would not believe that he or she would be able to provide competent and diligent representation of codefendants with conflicting interests and defenses).

[162] *See* Model Rules of Prof'l Conduct R. 1.7, cmt. 16.

[163] Model Rules of Prof'l Conduct R. 1.7, cmt. 17.

against another client," *i.e.* passenger Plaintiff Murphy's claims for negligence against Defendant Amtrak based on a theory of *respondeat superior*.[164]  It is also probable that Plaintiff Kern will be aligned directly against the other Plaintiffs due to the failure to warn claims contained in every Plaintiff's complaint and the relevance of Plaintiff Kern's testimony to those claims. [165] Accordingly, the Court finds that the concurrent conflicts of interest in Plaintiffs' counsel's representation are not consentable under Rule 1.7(b).

### 3.   Even if the Conflicts Were Consentable, Informed Consent has not been Obtained

Finally, even if the other three requirements of Rule 1.7(b) were met, Plaintiffs' counsel has not obtained informed consent from each of their clients in this litigation, as required under paragraph (b)(4).[166]  Informed consent requires that each affected client "be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client."[167]  Moreover, when representation of multiple clients in a single matter is undertaken, the information given to each of the clients must include "the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege and the advantages and risks involved."[168]  Paragraph (b)(4) also requires a lawyer to obtain a written confirmation of each client's consent to representation, which may consist of a document executed by the client or one that the lawyer promptly records and transmits to the client following oral consent.[169]

---

[164] *See* Model Rules of Prof'l Conduct R. 1.7.

[165] *Id.*

[166] Model Rules of Prof'l Conduct R. 1.7 (b)(4).

[167] Model Rules of Prof'l Conduct R. 1.7, cmt. 18. *See also* Model Rules of Prof'l Conduct R. 1.0(e).

[168] Model Rules of Prof'l Conduct R. 1.7, cmt. 18.

[169] Model Rules of Prof'l Conduct R. 1.7, cmt. 20.

Here, Plaintiffs' counsel submitted an affidavit with Plaintiffs' opposition brief in which attorney Blake G. Arata, Jr. represented that each of his clients has affirmed that he or she "is not alleging or asserting claims of negligence against any other Amtrak employees aboard the train" and that he or she "has given informed consent to not alleging or asserting claims against any Amtrak employees aboard the train at the time of the accident."[170] Assuming that counsel did obtain these affirmations from his clients, they do not constitute informed consent to representation despite the existence of a conflict. Rather, these affirmations indicate that Plaintiffs have agreed to foreclose potential courses of action in this litigation.[171] There is no indication that counsel explained "the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege and the advantages and risks involved."[172] From Plaintiffs' submitted affidavit, it appears that Plaintiffs' counsel have attempted to avoid or minimize conflicts of interest in its representation of Plaintiffs rather than informing their clients of the existence of potential conflicts and the implications of joint representation.[173] Additionally, there is no indication that Plaintiffs' counsel obtained consent from each individual Plaintiff in writing, as required under paragraph (b)(4).[174] Accordingly, the Court finds that Plaintiffs' counsel

---

[170] Rec. Doc. 52-1 at 2.

[171] *See* Model Rules of Prof'l Conduct R. 1.7, cmt. 8.

[172] Model Rules of Prof'l Conduct R. 1.7, cmt. 18.

[173] *See In Matter of Torch, Inc.*, Nos. 94-2300, 95-1982, 1996 WL 372020, *2 (E.D. La. July 3, 1996) (Duval, J.) (finding no waiver of conflict where attorney set forth factual basis for conflict of interest to client but then improperly characterized the legal ramifications of the conflict); *Herron v. Chisolm*, No. 412-41, 2012 WL 6645643, *4 (S.D. Ga. Dec. 19, 2012) (finding no informed consent under identical rule where attorney represented to clients that there was no risk for a conflict of interest in joint representation). *See also Wheat v. U.S.*, 486 U.S. 153, 163 (1988) (holding that a "district court must be allowed substantial latitude in refusing waivers of conflicts of interests not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses").

[174] Model Rules of Prof'l Conduct R. 1.7 (b)(4). *See also Douglass v. Valteau*, No. 5-662, 2005 WL 1431510, *1 (E.D. La. June 9, 2005) (Wilkinson, Mag.).

have not obtained informed consent to joint representation despite the existence of a conflict from any of its clients, confirmed in writing or otherwise.[175]

### 4.    Disqualification is Necessary

Because there is a significant risk that the representation of one or more Plaintiffs will be materially limited by counsel's responsibilities to another Plaintiff, concurrent conflicts of interest exist in this case.[176] The conflicts are nonconsentable, because a reasonable lawyer would not reasonably believe that he or she would be able to provide "competent and diligent representation" to each affected client.[177] Moreover, it appears that the representation of Plaintiffs involves the assertion of a claim by one client against another client represented by Plaintiffs' counsel in the same litigation.[178] Even if these conflicts were waivable, it has not been properly waived, as there is no evidence in the record to suggest that Plaintiffs' counsel properly obtained informed consent to join representation despite the existence of a conflict, confirmed in writing, from each of its clients in this litigation.[179]

Mindful that "depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration,"[180] the Court nevertheless finds that disqualification of counsel is necessary where, as here, the evidence establishes the existence of serious nonconsentable concurrent conflicts of interest.[181] Social

---

[175] *See In Matter of Torch, Inc.*, 1996 WL 372020, at *2.

[176] Model Rules of Prof'l Conduct R. 1.7 (a)(2).

[177] Model Rules of Prof'l Conduct R. 1.7 (b)(1).

[178] Model Rules of Prof'l Conduct R. 1.7 (b)(3).

[179] *See* Model Rules of Prof'l Conduct R. 1.7 (b)(4).

[180] *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1313 (5th Cir. 1995).

[181] *See Bellino v. Simon*, No. 99-2208, 1999 WL 1277535, *4 (E.D. La. Dec. 28, 1999) (Vance, J.) (disqualifying law firm where "serious conflict of interest" existed and could not be cured by waiver); *In Matter of Torch*, No. 94-2300, 95-1982, 1996 WL 372020, *2 (E.D. La. July 3, 1996) (Duval, J.) (disqualifying attorneys with concurrent conflicts of interest who did not obtain valid waiver from client); *Brennan v. Brennan*, No. 13-2491,

interests also weigh in favor of disqualification, because the concurrent conflicts of interest in this case have "the appearance of impropriety in general" and there is "a possibility that a specific impropriety will occur."[182] Because counsel would necessarily have to temper their representation of certain Plaintiffs in order to protect the conflicting interests of other Plaintiffs, there is a strong likelihood that "public suspicion from the impropriety" would outweigh "any social interests" which would be served by Plaintiffs' counsel's continued participation in the case.[183]

## IV. Conclusion

The Court finds that there exist concurrent conflicts of interest in Plaintiffs' counsel's representation of Plaintiffs Benefield, Dorest, Johnson, Kern, Mayes, Murphy, Rainey, and Wilson, because there is a significant risk that the representation of one or more Plaintiffs will be materially limited by counsel's responsibilities to another Plaintiff.[184] The Court further finds that the conflict is nonconsentable, because a reasonable lawyer would not reasonably believe that he or she would be able to provide competent and diligent representation to each affected client and it appears that this litigation involves the assertion of a claim by one client against another client represented by Plaintiffs' counsel in the same litigation.[185] Furthermore, even if the conflicts were consentable, Plaintiffs' counsel has not obtained informed consent from each of their clients, confirmed in writing.[186] Finally, the Court finds that social interests weigh in favor of

---

2013 WL 1897126, *3 (E.D. La. May 6, 2013) (Morgan, J.) (disqualifying law firm where Rule 1.7 conflict was not waived).

[182] *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995).

[183] *Id. See also In re Dresser Industries, Inc.*, 972 F.2d 540 (5th Cir. 1992) (holding that disqualification of attorney was warranted where attorney had concurrent conflict of interest and presented no reason that "some social interest to be served by his representation would outweigh the public perception of his impropriety").

[184] La. Rules of Prof'l Conduct R. 1.7(a)(2).

[185] La. Rules of Prof'l Conduct R. 1.7(b)(1), (b)(3).

[186] La. Rules of Prof'l Conduct R. 1.7(b)(4).

disqualification, because there is a strong likelihood that the public suspicion from the appearance of impropriety would outweigh any social interests which would be served by Plaintiffs' counsel's continued participation in the case.[187]

Accordingly,

**IT IS HEREBY ORDERED** that Amtrak's "Motion to Determine Conflict-Free Representation"[188] is **GRANTED**.

**IT IS FURTHER ORDERED** that Blake G. Arata, Jr., C. Perrin Rome, III, W. Chad Stelly, and Dane S. Ciolino are disqualified from representing Plaintiffs Benefield, Dorest, Johnson, Kern, Mayes, Murphy, Rainey, and Wilson in this matter.

**NEW ORLEANS, LOUISIANA**, this __1st__ day of December, 2016.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[187] *See FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995).

[188] Rec. Doc. 44.