**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DOROTHY JOHNSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-3290 c/w 15-3314; 15-3315; 15-3318; 15-3319; 15-3320; 15-3321; 16-14271; and 16-14393** |
| **CLARK GIN SERVICE, INC., et al.** | **SECTION: "G"(5)** |

## ORDER

In this consolidated litigation, Plaintiffs Robert Morgan ("Morgan") and Arnold Murphy ("Murphy") bring claims against Defendants National Railroad Passenger Corporation ("Amtrak"), Clark Gin Service, Inc. ("Clark Gin"), State Farm Mutual Automobile Insurance Company ("State Farm"), and Illinois Central Railroad Company ("Illinois Central") for injuries sustained during a collision between an Amtrak train and a tractor-trailer.[1] Pending before the Court is Amtrak and Illinois Central's "Motion for Summary Judgment."[2] Having reviewed the motion, the memoranda in support, the memoranda in opposition, the record, and the applicable law, the Court will grant the motion in part and deny the motion in part.

## I. Background

### A.   Factual Background

This litigation arises out of an accident that occurred on September 10, 2013, at a railroad crossing near Tchula, Mississippi.[3] At that time, Amtrak Train No. 59, also known as "The City

---

[1] *See Morgan v. Clark Gin Service, Inc., et al.*, Case No. 16-14393, Rec. Doc. 1 at 2; *Murphy v. Clark Gin Service, Inc., et al.*, Case No. 15-14271, Rec. Doc. 1.

[2] Rec. Doc. 98.

[3] *See Morgan v. Clark Gin Service, Inc., et al.*, Case No. 16-14393, Rec. Doc. 1 at 3.

of New Orleans," collided with a tractor-trailer operated by Alvin W. Yeates ("Yeates"), a driver for Clark Gin.[4] Plaintiff Brett Kern was a locomotive engineer aboard the train,[5] and Plaintiff Morgan was a conductor at the time of the accident.[6] Plaintiffs Dorothy Johnson, Vincent Dorest, Enrique Mayes, Cheryl Rainey, Kytosha Wilson, and Gene Benefield were service crew members aboard Amtrak Train No. 59 at the time of the accident,[7] and Plaintiff Arnold Murphy was a passenger.[8]

## B.    *Procedural Background*

On August 6, 2015, Plaintiff Johnson filed the first complaint in this action.[9] Plaintiffs Dorest, Mayes, Rainey, Benefield, Wilson, and Kern also filed complaints against Defendants on August 6, 2015.[10] Plaintiff Murphy filed a complaint against Defendants on August 30, 2016,[11] and on September 1, 2016, Plaintiff Morgan filed the final complaint in this litigation.[12] The claims of Plaintiffs Kern, Benefied, Johnson, Dorest, Mayes, Rainey and Wilson have now been settled.[13]

---

[4] *Id.*

[5] *Kern v. Clark Gin Service, Inc., et al.*, Case No. 15-3321, Rec. Doc. 1 at 2.

[6] *Morgan v. Clark Gin Service, Inc., et al.*, Case No. 16-14393, Rec. Doc. 1 at 2.

[7] *See* Rec. Doc. 1; *Dorest v. Clark Gin Service, Inc., et al.*, Case No. 15-3314, Rec. Doc. 1; *Mayes v. Clark Gin Service, Inc., et al.*, Case No. 15-3315, Rec. Doc. 1; *Rainey v. Clark Gin Service, Inc., et al.*, Case No. 15-3318, Rec. Doc. 1; *Benefield v. Clark Gin Service, Inc., et al.*, Case No. 15-3319, Rec. Doc. 1; *Wilson v. Clark Gin Service, Inc., et al.*, Case No. 15-3320, Rec. Doc. 1.

[8] *Murphy v. Clark Gin Service, Inc., et al.*, Case No. 15-14271, Rec. Doc. 1.

[9] Rec. Doc. 1.

[10] *Dorest v. Clark Gin Service, Inc., et al.*, Case No. 15-3314, Rec. Doc. 1; *Mayes v. Clark Gin Service, Inc., et al.*, Case No. 15-3315, Rec. Doc. 1; *Rainey v. Clark Gin Service, Inc., et al.*, Case No. 15-3318, Rec. Doc. 1; *Benefield v. Clark Gin Service, Inc., et al.*, Case No. 15-3319, Rec. Doc. 1; *Wilson v. Clark Gin Service, Inc., et al.*, Case No. 15-3320, Rec. Doc. 1.

[11] *Murphy v. Clark Gin Service, Inc., et al.*, Case No. 15-14271, Rec. Doc. 1.

[12] *Morgan v. Clark Gin Service, Inc., et al.*, Case No. 16-14393, Rec. Doc. 1.

[13] *See* Rec. Docs. 79, 140, 142.

The only remaining Plaintiffs in this consolidated litigation are Morgan, a conductor aboard the Amtrak train, and Murphy, a passenger aboard the train.

Plaintiff Morgan brings a claim pursuant to the Federal Employer's Liability Act, 45 U.S.C. §51, *et seq.* ("FELA") against Amtrak, alleging that the injuries he sustained on September 10, 2013, were due in whole or in part to the negligence of Amtrak.[14] Plaintiff Morgan also alleges claims for negligence against Clark Gin, State Farm, and Illinois Central, the company that he alleges is responsible for maintaining the tracks and crossing where the accident occurred.[15] In his complaint, passenger Plaintiff Murphy brings negligence claims against Clark Gin and State Farm.[16] Murphy also bring a negligence claim against Amtrak, alleging that acts of negligence "were committed by employees, agents, and/or representatives of Defendant Amtrak, while acting in the course and scope of their employment, thereby rendering Defendant Amtrak vicariously liable under the theory of *respondeat superior*."[17]

The first seven cases in this litigation were consolidated for discovery purposes on December 11, 2015,[18] and consolidated for all purposes on March 24, 2016.[19] The two most recent cases were consolidated for all purposes on October 6, 2016.[20]

On April 11, 2017, Defendants Amtrak and Illinois Central filed the instant motion for

---

[14] *Morgan v. Clark Gin Service, Inc., et al.*, Case No. 16-14393, Rec. Doc. 1 at 3–4.

[15] *Id.* at 5–9.

[16] *Murphy v. Clark Gin Service, Inc., et al.*, Case No. 16-14271, Rec. Doc. 1 at 3–4.

[17] *Id.* at 5.

[18] Rec. Doc. 18.

[19] Rec. Doc. 22.

[20] Rec. Doc. 38.

summary judgment.[21] On April 21, 2017, Plaintiff Morgan filed an opposition to the motion.[22] Defendants Clark Gin and State Farm also filed an opposition to the motion on April 21, 2017.[23] On April 24, 2017, Plaintiff Murphy filed an opposition to the motion.[24] With leave of Court, Amtrak and Illinois Central filed a reply in further support of the motion for summary judgment.[25]

## II. Parties' Arguments

### A.  *Amtrak and Illinois Central's Arguments in Support of the Motion*

In support of their motion, Amtrak and Illinois Central ("Movants") argue that the accident at issue was caused by the sole negligence of Clark Gin's driver Yeates.[26] According to Movants, it is undisputed that the railroad crossing at issue has a "crossbuck sign" but no automatic signal devices, crossing gates, or human flagman.[27] Movants represent that under Mississippi law, a driver of a vehicle approaching a railroad crossing like the one at issue in this case must yield the right of way to approaching trains and stop "if required for safety at a clearly marked stop line, or if no stop line, within fifty (50) feet, but not less than fifteen (15) feet, from the nearest rail of the railroad, and shall not proceed until he can do so safely."[28] Thus, Movants contend that Yeates was required by Mississippi law to stop the tractor-trailer at the subject crossing and refrain from

---

[21] Rec. Doc. 98.

[22] Rec. Doc. 127.

[23] Rec. Doc. 126.

[24] Rec. Doc. 129.

[25] Rec. Doc. 136. The Court notes that Plaintiffs Dorest, Mayes, Rainey, and Wilson also filed an opposition to the motion. *See* Rec. Doc. 122. However, because the parties have now reached a settlement as to the claims of those Plaintiffs, the Court will not consider their opposition.

[26] Rec. Doc. 98-2 at 6.

[27] *Id.*

[28] *Id.* (citing Miss. Code Ann. § 77-9-249(4)).

proceeding onto the crossing until it was safe to do so.[29] Moreover, Movants note that Yeates has held a commercial driver's license ("CDL") since 1982.[30] Movants assert that under Federal Motor Carrier Safety Regulations, a holder of a CDL approaching a railroad crossing must not drive upon such a crossing "until due caution has been taken to ascertain that the course is clear."[31] Movants further represent that the federal regulations instruct that a driver of a commercial vehicle may not drive onto a rail crossing "without having sufficient space to drive completely through the crossing without stopping."[32]

Movants assert that the Amtrak train at issue in this case was equipped with a camera that recorded the events prior to, during, and after the accident.[33] According to Movants, the video recording "leaves no doubt" that Yeates violated the applicable state and federal law regarding railroad crossings on the day of the subject accident.[34] Movants argue that the video recording clearly shows that Yeates had a clear view of the oncoming train and received audible warnings through the train's horn but nevertheless failed to slow or yield as required under state and federal law.[35] Moreover, Movants argue that the video also shows that Yeates stopped the truck's trailer on the tracks in direct violation of federal regulations.[36]

---

[29] *Id.* at 7.

[30] *Id.* at 6 (citing Rec. Doc. 98-7 at 27).

[31] *Id.* at 7 (citing 49 C.F.R. § 392.11).

[32] *Id.* (citing 49 C.F.R. § 392.12).

[33] *Id.* at 2 (citing Rec. Doc. 98-4).

[34] *Id.* at 7.

[35] *Id.* at 7–8.

[36] *Id.* at 8.

Next, Movants assert that Yeates's own testimony reinforces the facts evidenced by the video recording.[37] According to Movants, Yeates testified in his deposition that: (1) he had been trained to stop within 15 feet of railroad tracks to determine whether a train was coming before crossing; (2) he had travelled over the subject crossing approximately ten times before the accident; and (3) Clark Gin's owner had warned Yeates to watch for trains at the crossing.[38] Movants represent that Yeates also testified that there were no impediments to his ability to view the oncoming train and that he knew that if he had to stop at the highway parallel to the train tracks, part of his vehicle would be blocking the tracks.[39] After viewing the video, Movants contend, Yeates agreed that the collision would not have occurred if he had taken appropriate precautions.[40]

Movants next argue that Plaintiffs' allegations of negligence against them, even if proven true, did not cause or contribute to the subject accident.[41] Movants contend that there was no intervening negligence on their part that prevented Yeates from yielding to the approaching train and that once Yeates drove onto the tracks, the accident was unavoidable.[42] Movants argue that the recording of the accident constitutes "unique and uncontested factual evidence" and shows "exactly how the accident occurred."[43]

Next, Movants argue that Plaintiffs have no evidence that the engineer operating the train

---

[37] *Id.*

[38] *Id.* (citing 98-7 at 31, 38, 40, 47).

[39] *Id.* (citing 98-7 at 46–47).

[40] *Id.* at 8–9 (citing 98-7 at 68).

[41] *Id.* at 9.

[42] *Id.*

[43] *Id.* at 10.

was negligent or that he could have avoided the subject accident.[44] According to Movants, the engineer was legally entitled to assume that Yeates would yield the right of way to the approaching trains and had no duty to stop or slow the train for the approaching vehicle.[45] Movants argue that Plaintiff Robert Morgan, the conductor aboard the Amtrak train, has no evidence to support his allegations of negligence against either Amtrak or Illinois Central.[46] According to Movants, Morgan has no evidence that Amtrak failed to provide a reasonably safe place to work or reasonably safe equipment.[47] Movants further contend that Morgan has no evidence that Amtrak failed to warn of dangers it knew of beforehand or that it permitted a dangerous and hazardous condition to exist on the crossing where its employees were required to work.[48]

Next, Movants note that Morgan has made a claim of negligence against Illinois Central, *i.e.* that Illinois Central was "negligent in failing to properly maintain, control, and warn of its defective railroad crossing and tracks where the collision took place."[49] However, Movants argue, Morgan has failed to identify any specific defect at the subject crossing and has produced no evidence of any defects.[50] Movants contend that the uncontroverted evidence demonstrates that there was a crossbuck sign in place and that there were no obstructions at the crossing.[51] As a

---

[44] *Id.*

[45] *Id.* at 11 (citing *Ill. Cent. Gulf R.R. Co. v. Travis*, 106 So.3d 320, 330–31 (Miss. 2012)).

[46] *Id.* at 15.

[47] *Id.* 15–16.

[48] *Id.* at 16.

[49] *Id.* (citing Civ. A. No. 16-14393, Rec. Doc. 1).

[50] *Id.* at 16–17.

[51] *Id.* at 17.

result, Movants contend that Morgan's claim against Illinois Central should be dismissed.[52]

Finally, Movants argue that passenger Plaintiff Murphy has no evidence to support his allegations of negligence against Amtrak.[53] Movants contend that Murphy has no evidence that Amtrak failed to provide reasonably safe transportation, failed to provide safety devices, failed to warn its passengers, failed to control obstructions, failed to maintain smooth crossing surfaces, or permitted hazards to exist in the train's path.[54] Movants further argue that Plaintiff Murphy has no evidence to support his conclusory allegations that Amtrak failed to instruct or provide assistance to its passengers or that it failed to promulgate reasonable procedures for the transportation of its passengers.[55] Moreover, Movants contend that Murphy has no evidence that the accident could have been avoided even if his allegations against Amtrak are true.[56]

## B. Clark Gin and State Farm's Opposition to Summary Judgment

In their opposition, Defendants Clark Gin and State Farm argue that genuine issues of material fact preclude summary judgment.[57] First, Clark Gin and State Farm argue that there is evidence in the record that indicates that the Amtrak train's engineer acted negligently in failing to keep a proper lookout, which prevented him from slowing or stopping the train in a timely manner to prevent or minimize the severity of the accident.[58] Moreover, Clark Gin and State Farm

---

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.* at 18.

[56] *Id.*

[57] Rec. Doc. 126 at 5.

[58] *Id.* at 6.

contend that the evidence demonstrates that the engineer either entirely failed to warn the passengers and employees or failed to warn them in a timely manner of the impending crash.[59] Clark Gin and State Farm note that the subject accident was investigated by Charles Culver, who they represent is an expert in train handling and railroad operations.[60] According to Clark Gin and State Farm, based on his investigation of the evidence, Culver concluded that the engineer failed to keep a proper lookout and did not see the tractor-trailer until it was stopped directly in front of him.[61] Moreover, Clark Gin and State Farm represent, Culver opined that a vigilant engineer would have seen the tractor-trailer "long before" it straddled the railroad crossing.[62]

Next, Clark Gin and State Farm argue that there are genuine issues of material fact as to whether Amtrak provided proper training to the engineer so that he would be prepared to respond appropriately in emergency situations.[63] Clark Gin and State Farm represent that the engineer admitted in deposition testimony that he did not know the stopping distance of the train that he was operating on the day of the accident.[64] According to Clark Gin and State Farm, Culver opined that an engineer's lack of knowledge of the stopping capabilities of a train prevent him from operating the train in the safest manner.[65] Moreover, Clark Gin and State Farm represent that Culver opined that if Amtrak had implemented a rule requiring emergency brake application when

---

[59] *Id.*

[60] *Id.* (citing Rec. Doc. 126-2).

[61] *Id.* at 10 (citing Rec. Doc. 126-3).

[62] *Id.*

[63] *Id.*

[64] *Id.* at 10–11.

[65] *Id.* at 11.

necessary to protect life and property, the engineer would have had proper training and would have been instructed to apply the emergency brakes before the trailer straddled the crossing.[66]

Next, Clark Gin and State Farm argue that the findings of negligence by Culver are corroborated by the testimony of other Plaintiffs who were aboard the train at the time of the accident.[67] According to Clark Gin and State Farm, Plaintiff Johnson, a sleeping car attendant aboard the train, testified in her deposition that she did not receive a warning from the engineer that a crash was imminent and that she did not hear any sound that would indicate that the emergency brakes had been applied.[68] Clark Gin and State Farm also represent that Plaintiff Morgan, the conductor aboard the train, testified in his deposition that only half a second passed between the time that he heard the application of the emergency brakes and impact.[69] According to Clark Gin and State Farm, Morgan also testified regarding a conversation with the engineer following the accident in which the engineer indicated that he "looked up and all he could see was the truck" and that he tried to apply the emergency brake but his hand slipped off the brake valve.[70] Clark Gin and State Farm also represent that Plaintiff Murphy, a passenger aboard the train, testified in his deposition that there was no warning made to passengers of the impending accident.[71] Finally, Clark Gin and State Farm note that Luis Gutierrez, an Illinois Central signalman who was riding with the engineer at the time of the accident, testified in his deposition

---

[66] *Id.* at 12.

[67] *Id.* at 13.

[68] *Id.* at 14–15.

[69] *Id.* at 17.

[70] *Id.* at 18 (citing Rec. Doc. 126-5).

[71] *Id.* at 19 (citing Rec. Doc. 126-6).

that the train slowed down only right before the impact.[72]

According to Clark Gin and State Farm, the testimony of Johnson, Morgan, Murphy, and Gutierrez, indicate that genuine issues of fact exist as to whether Amtrak and its employees acted negligently in failing to keep a proper lookout or to issue a reasonable warning of the imminent crash.[73]

## C.    *Plaintiff Morgan's Opposition to Summary Judgment*

In his opposition, Plaintiff Morgan, a conductor on the subject Amtrak train, argues that Amtrak's liability in this case stems from the negligence of its engineer in failing to slow the train before impact through application of the emergency brake.[74] Morgan contends that deposition testimony from Amtrak crew members and passenger Plaintiff Murphy indicate that there was no warning of the impending accident as required by Amtrak's own *Service Standards for Train Service and On-Board Service Employees.*[75] Morgan notes that his testimony that only half a second passed between the time he heard the emergency brake applied and the collision is consistent with the recent testimony of Gutierrez, an Illinois Central employee, who testified that there was only a second that the train slowed before impact.[76]

Moreover, Morgan contends that the deposition testimony of himself and others corroborates the video recording, which Morgan represents shows that the engineer did not apply the emergency brake until video time stamp 1:01 and the collision occurred at video time stamp

---

[72] *Id.* at 20 (citing Rec. Doc. 126-7).

[73] *Id.*

[74] Rec. Doc. 127 at 3.

[75] *Id.*

[76] *Id.* at 4 (citing Rec. Doc. 127-4).

1:02.[77] Morgan asserts that Culver, a railroad operations consultant, assessed the subject accident and concluded that the engineer was negligent in failing to keep a proper lookout, that his actions indicated a lack of training, and that the accident could have been prevented or mitigated if the engineer had been vigilant and taken action to reduce the speed of the train.[78]

According to Morgan, the evidence indicates that several genuine issues of fact exist as to whether the engineer acted negligently on the date of the accident.[79] Morgan contends that under FELA, the jury should be allowed to weigh the evidence to determine whether Defendants contributed "in whole or in part" to Morgan's injuries and a plaintiff must only show that Defendants' negligence played the "slightest" part in causing injuries for which damages are sought.[80] Thus, Morgan argues that the Court should deny the motion for summary judgment.[81]

### D.    *Plaintiff Murphy's Opposition to the Motion for Summary Judgment*

In his opposition, Plaintiff Murphy asserts that he was a passenger on the Amtrak train at issue and that he was not made aware of or provided with any emergency procedures or safety awareness information.[82] Murphy argues that Amtrak's engineer acknowledged in his deposition testimony that he did not see the tractor trailer until it was already straddling the crossing.[83] Murphy contends that the video recording also supports the assertion that the engineer failed to

---

[77] *Id.* (citing Rec. Doc. 98-2).

[78] *Id.* at 4–5 (citing Rec. Doc. 127-5).

[79] *Id.* at 9.

[80] *Id.* (citing *Consol. Rail Corp.*, 512 U.S. at 543).

[81] *Id.* at 10.

[82] Rec. Doc. 129 at 2.

[83] *Id.* at 4 (citing Rec. Doc. 129-2).

keep a proper lookout, as he represents the video shows that the truck was not yielding at the video time stamp of 0:41 and eventually stopping on the tracks, but the engineer did not apply the brakes until video time stamp 1:01, just one second before impact.[84]

Moreover, Murphy contends that in its briefing in support of its motion to disqualify Plaintiffs' counsel, Amtrak acknowledged that the engineer's ability to give an emergency warning or to give one in a timelier manner would be an issue for the jury to determine.[85] According to Murphy, Amtrak now contradicts its prior representations to the Court by suggesting that the engineer's fault in failing to issue a timely warning is not an issue for the jury.[86] Finally, Murphy argues that under Mississippi law, a carrier of passengers must exercise the highest degree of care and diligence for the safety of its passengers.[87] According to Murphy, Amtrak failed to do so when it did not provide Murphy with any emergency procedures or warnings in accordance with federal regulations.[88]

## F.    *Movants' Reply in Further Support of Summary Judgment*

In their reply, Movants contend that the arguments in opposition to the motion do not overcome the applicable law recognizing that the engineer was entitled to rely upon Yeates to comply with his legal obligations at the crossing and had no duty to slow or stop the train until it

---

[84] *Id.* at 4–5 (citing Rec. Doc. 129-3).

[85] *Id.* at 5 (citing Rec. Doc. 129-6).

[86] *Id.*

[87] *Id.* at 6 (citing *Yazoo & MVR Co. v. Hawkins*, 163 Miss. 05 (1932)).

[88] *Id.* (citing 49 C.F.R. § 239.101(7)(i), (ii)).

became apparent that Yeates would not safely clear the crossing.[89] According to Movants, the engineer was under no duty to alter the train's speed until Yeates illegally stopped the Clark Gin vehicle on the tracks.[90] Movants contend that Yeates was the sole cause of the subject accident and that no party has cited to any applicable law that required the engineer to slow the train before it became apparent that Yeates would not clear the crossing safely.[91] Movants further contend that but for the negligence of Yeates, the subject accident would not have occurred.[92]

Movants acknowledge that Amtrak has a non-delegable duty to provide a safe place to work but argue that FELA does not make the employer the insurer of the safety of its employees.[93] According to Movants, under theories of common law negligence and FELA negligence, a plaintiff bears the burden of proving: (1) breach of the standard of care; (2) causation; and (3) damages.[94] Movants contend that the opposing parties have not pointed to any factual evidence to demonstrate that the engineer breached the duty of a locomotive engineer under Mississippi or other law.[95] Movants aver that prior to the moment that Yeates suddenly stopped in the railroad crossing, the engineer had no legal duty to slow the train.[96] According to Movants, the engineer testified that when he saw the truck and did not think that it was going to be able to get out of the way, he put

---

[89] Rec. Doc. 136 at 1.

[90] *Id.* at 2.

[91] *Id.*

[92] *Id.* at 3 (citing Rec. Doc. 98-2).

[93] *Id.* (citing *Consol. Rail. Corp.v. Gottshall*, 512 U.S. 532, 543 (1994)).

[94] *Id.* at 4 (citing *Huffman v. Union Pac. R.R.*, 675 F.3d 412, 418 (5th Cir. 2012)).

[95] *Id.*

[96] *Id.* (citing *Ill. Cent. Gulf R. Co. v. Travis*, 106 So.3d 320, 330 (Miss. 2012)).

the emergency brake on.[97] Moreover, Movants represent that another eyewitness to the accident, Illinois Central employee Gutierrez, testified that there were only a couple of seconds between the time he and the engineer knew that they were going to make impact and the time that they did.[98] Thus, Movants argue, the recording and the testimony of the only three eyewitnesses to the accident, *i.e.* the engineer, Gutierrez, and Yeates, confirm that Yeates violated the law and that the accident was unavoidable before the engineer had any duty to stop or slow the train.[99] Because there is no evidence of the essential element of breach of the standard of care, Movants argue that summary judgment is appropriate.[100]

Next, Movants argue that the engineer had no duty to maintain a lookout beyond the right of way of the railroad crossing and no duty to alter the speed of the train until it became apparent that the driver would not clear the crossing.[101] Movants contend that there is no evidence that the engineer acted in violation of the applicable law and that arguments that the engineer could have slowed the train earlier are irrelevant, as there is no evidence that the accident could have been avoided had the brakes been applied sooner.[102] Movants further argue that none of the Plaintiffs alleged inadequate training in their pleadings and that Plaintiffs have not conducted any discovery on Amtrak's general training of engineers or its specific training of the engineer in this case.[103]

---

[97] *Id.* at 5 (citing Rec. Doc. 136-1).

[98] *Id.* (citing Rec. Doc. 136-2).

[99] *Id.* at 5–6.

[100] *Id.* at 6.

[101] *Id.*

[102] *Id.*

[103] *Id.* at 7.

Next, Movants contend that arguments regarding the engineer's alleged failure to warn are contrary to the evidence and irrelevant.[104] Movants aver that a warning to the Plaintiffs could not have prevented the subject accident and that the engineer's undisputed testimony is that when the truck stopped on the tracks, he had no time to issue a warning to anyone.[105] Because, Movants assert, the engineer could not have warned anyone of the unavoidable collision, Movants argue that they are entitled to summary judgment on Plaintiffs' claims for failure to warn.[106] Movants further assert that the relaxed standard of proof in a FELA analysis applies to causation but not to breach.[107] Movants argue that the relaxed standard is irrelevant here, because Plaintiff Morgan has not provided any evidence of a breach of a duty by the Amtrak engineer.[108]

Movants next argue that another court in the Eastern District of Louisiana dismissed similar claims that an engineer failed to slow a train prior to collision on summary judgment.[109] Movants argue that in that case, as in the present case, the engineer's duty to slow the train was not triggered until the vehicle's driver violated the law and it was clear that the vehicle would not safely clear the crossing.[110]

Finally, Movants assert that Plaintiff Morgan has not produced any evidence in support of

---

[104] *Id.*

[105] *Id.* (citing Rec. Doc. 136-2).

[106] *Id.*

[107] *Id.* at 7–8 (citing *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703–704 (2011)).

[108] *Id.* at 8.

[109] *Id.* (citing *Alfaro v. Nat'l R.R. Passenger Corp.*, No. 10-1912, 2012 WL 12865241, at *1 (E.D. La. Oct. 3, 2012) (Lemmon, J.), *aff'd* 553 F. App'x 446 (5th Cir. 2014)).

[110] *Id.* at 9.

his negligence claim against Illinois Central and that that claim should thus be dismissed.[111]

### III. Law and Analysis

**A.     *Legal Standard on Summary Judgment***

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[112] When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[113] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[114] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[115]

On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[116] Where the non-moving party bears the burden of proof at trial, the party moving

---

[111] *Id.*

[112] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[113] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[114] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[115] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[116] *Celotex,* 477 U.S. at 323.

for summary judgment may meet its burden by showing the Court that there is an absence of evidence to support the non-moving party's case.[117] Thereafter, if the moving party satisfies its initial burden, the burden shifts to the non-moving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[118] In doing so, the non-moving party may not rest upon mere allegations or denials in his pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[119] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[120] There is no genuine issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[121]

## B.   *Analysis*

In this litigation, Amtrak employee Plaintiff Morgan, a conductor on the subject train at the time of the accident, brings a negligence claim against Amtrak pursuant to FELA and a negligence claim against Illinois Central.[122] Plaintiff Murphy, a passenger on the subject Amtrak

---

[117] *Id.* at 325.

[118] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[119] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992)); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[120] *Little*, 37 F.3d at 1075.

[121] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).

[122] *See* Civ. A. No. 16-14393, Rec. Doc. 1 at 4.

train, brings a negligence claim against Amtrak.[123]  The Court will address each of these claims in turn to determine whether summary judgment is appropriate.

   1.   **Whether Summary Judgment is Appropriate as to Plaintiff Morgan's Claim against Amtrak Pursuant to FELA**

Under FELA, an injured railroad employee may recover damages for "injury or death resulting in whole or in part from the negligence" of the railroad company.[124]  FELA provides the exclusive remedy for a railroad employee engaged in interstate commerce whose injury resulted from the negligence of the railroad company.[125]  To prevail under FELA, "a plaintiff must prove: (1) the defendant is a common carrier by railroad engaged in interstate commerce; (2) he was employed by the defendant with duties advancing such commerce; (3) his injuries were sustained while he was so employed; and (4) his injuries resulted from the defendant's negligence."[126]  What constitutes negligence under FELA "is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes. Federal decisional law formulating and applying the concept governs."[127]  Negligence within the meaning of FELA exists if the defendant railroad company "knew, or by the exercise of due care should have known" that its conduct was "inadequate to protect [the plaintiff] and similarly situated employees."[128]  Because an action under FELA is one for negligence, a plaintiff is required

---

[123]  *See* Civ. A. No. 16-14271, Rec. Doc. 1 at 4.

[124]  45 U.S.C. § 51.

[125]  *Huffman v. Union Pac. R.R.*, 675 F.3d 412, 416 (5th Cir. 2012) (citing *Rivera v. Union Pac. R.R.*, 378 F.3d 502, 507 (5th Cir. 2004)).

[126]  *Weaver v. Missouri Pac. R. Co.*, 152 F.3d 427 429 (5th Cir. 1998) (quoting *Smith v. Med. & Surg. Clinic Ass'n*, 118 F.3d 416, 419 (5th Cir. 1997)) (internal quotation marks omitted).

[127]  *Id.* (quoting *Urie v. Thompson*, 337 U.S. 163, 174 (1949)) (internal quotation marks omitted).

[128]  *Huffman*, 675 F.3d at 417 (quoting *Urie*, 337 U.S. at 178) (internal quotation marks omitted).

to demonstrate a breach of a standard of care, causation, and damages.[129] The standard of care for both the employer and employee under FELA is one of "ordinary prudence under the circumstances."[130]

Under FELA, if an injury has multiple causes, "it is sufficient if the railroad's negligence played a part—no matter how small—in bringing about the injury."[131] As the Fifth Circuit has held, the plaintiff's burden of proof in a FELA case is "featherweight" and "a judgment as a matter of law against the plaintiff in a FELA suit is appropriate only when there is a complete absence of probative facts supporting the plaintiff's position."[132]

Here, Movants argue that summary judgment is appropriate on Morgan's claim under FELA, because Morgan has offered no evidence of negligence on the part of Amtrak.[133] Specifically, Movants contend that the video recording of the accident demonstrates that Clark Gin's driver was the sole cause of the accident and that Morgan has pointed to no evidence to demonstrate that the Amtrak engineer breached a standard of care.[134] According to Movants, under Mississippi law, the Amtrak engineer "had no duty to slow or stop the train until it became apparent that Mr. Yeates would not safely clear the crossing."[135]

As an initial matter, the Court notes that what constitutes negligence for FELA's purposes is a "federal question, not varying in accordance with the differing conceptions of negligence

---

[129] *Id.* at 418 (citing *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 540 (1994)).

[130] *Id.* (citing *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338–39 (5th Cir. 1997)).

[131] *Id.* (quoting *CSX Transp., Inc. v. McBride*, 131 S.Ct. 2630, 2644 (2011)) (internal quotation marks omitted). *See also Rivera*, 378 F.3d at 510 (holding that liability arises under FELA if a railroad's negligence played "any party—however small—in the development of his condition").

[132] *Rivera*, 378 F.3d at 506 (internal citation omitted).

[133] Rec. Doc. 98-2 at 11, 15.

[134] *See id.* at 10; Rec. Doc. 136 at 4.

[135] Rec. Doc. 136 at 4 (citing *Illinois Cent. Gulf R. Co. v. Travis*, 106 So.3d 320, 330 (Miss. 2012)).

applicable under state law"[136] and that the standard of care for both the employer and employee under FELA is one of "ordinary prudence under the circumstances."[137] However, even assuming, as Movants argue, that the Amtrak engineer was under no duty to slow or stop the train until it was apparent that the tractor-trailer would not safely clear the crossing, Morgan has pointed to sufficient evidence in the record to demonstrate the existence of genuine disputes of material fact.

For example, Morgan points to the video recording itself, which he contends shows that the tractor-trailer was not yielding as it approached the tracks at video time stamp 0:41 but that the engineer did not apply the emergency brake until video time stamp 1:01, which was just one second before impact at video time stamp 1:02.[138] In addition to the video recording, Morgan has pointed to the deposition testimony of Amtrak crew member, Dorothy Johnson, who testified that before the accident she did not hear a hissing noise, which would have indicated that the train's emergency brakes had been activated.[139] Defendants Clark Gin and State Farm also note in their opposition that Johnson testified that she had previously been on a train that was involved in a "near miss," *i.e.* a near collision with a truck that was ultimately avoided.[140] During that near miss, Johnson testified, she was able to hear the emergency brakes and to grab onto something in preparation.[141]

Morgan also points to Plaintiff Murphy's deposition testimony that he did not feel the train slowing or hear brakes being applied before the accident, as well as Morgan's own deposition testimony that only half a second passed between the moment that he heard the emergency brakes

---

[136] *Weaver v. Missouri Pac. R. Co.*, 152 F.3d 427 429 (5th Cir. 1998) (internal citation omitted).

[137] *Huffman*, 675 F.3d at 418 (internal citation omitted).

[138] Rec. Doc. 127 at 4.

[139] *See id.* at 9 (citing Rec. Doc. 127-2 at 22, 141, 142).

[140] *See* Rec. Doc. 126 at 14 (citing Rec. Doc. 126-4 at 73).

[141] *See id.*

and the collision.[142] Morgan notes that his own deposition testimony is consistent with the deposition testimony of Luis Gutierrez, an Illinois Central employee who was riding in the locomotive with the engineer at the time of the collision, who testified that there was only a second that the train slowed before impact.[143] Additionally, Morgan points to the deposition testimony of the Amtrak engineer, who testified that he first noticed the truck when it was straddling the tracks even though there was nothing impeding his view and that he did not issue a warning prior to the collision because he did not have time.[144]

Finally, Morgan points to the affidavit of Charles Culver, a railroad operations consultant with training in train handling and railroad operations, who analyzed the video recording and engine event recorder that calculates the braking applications and speed of the train, as well as deposition testimony and other documents in evidence.[145] In Culver's affidavit, he states that based on his analysis of the evidence in this case, the engineer failed to keep a proper lookout.[146] Based on his analysis of the evidence, Culver also asserts that the accident could have been prevented or at least could have occurred at a lower speed if the engineer had seen the truck and taken action in a timely manner.[147]

Based on the foregoing evidence, the Court finds that Morgan has pointed to sufficient

---

[142] Rec. Doc. 127 at 4 (citing Rec. Doc. 127-4 at 101; Rec. Doc. 127-3 at 60).

[143] *See id.*

[144] *Id.* (citing Rec. Doc. 127-6 at 42, 118).

[145] *Id.* (citing Rec. Doc. 127-5).

[146] Rec. Doc. 127-5 at 2.

[147] *Id.* at 3. The Court notes that Movants have a pending motion to exclude the opinions of Culver at trial. *See* Rec. Doc. 101. However, Movants have not moved to strike Culver's affidavit attached to Morgan's opposition to the instant motion. While affidavits "setting forth ultimate or conclusory facts and conclusions of law insufficient to either support or defeat a motion for summary judgment," an affidavit that states sufficient relevant facts in connection with the expert's conclusion may be competent evidence on summary judgment. *See Hayter v. City of Mt. Vernon*, 154 F.3d 269, 273–74 (5th Cir. 1998). Moreover, the Court notes that even if it were to disregard Culver's affidavit, it would find that the other evidence identified in the record by Morgan is sufficient to raise a genuine issue of material fact as to whether the engineer acted with ordinary prudence.

evidence in the record to raise a genuine issue of material fact as to whether the Amtrak engineer acted with "ordinary prudence under the circumstances."[148] In other words, despite Movants' assertions to the contrary, there is evidence in the record to show that there is a genuine issue of material fact as to whether Amtrak breached a standard of care.

The Court notes that Movants vigorously assert that the accident could not have been avoided by Amtrak and that the sole cause of the accident was the action of Yeates in failing to yield to the oncoming train.[149] However, under FELA, if an injury has multiple causes, "it is sufficient if the railroad's negligence played a part—no matter how small—in bringing about the injury."[150] Here, Morgan has pointed to evidence in the record suggesting that Amtrak's alleged failure to slow the train and failure to warn of an impending collision played a part in causing his injuries. Thus, even assuming that Amtrak could not have avoided the collision with the tractor-trailer entirely, summary judgment would nevertheless be inappropriate on Morgan's claim under FELA, because Morgan has set forth sufficient evidence to raise a genuine issue of material fact as to whether Amtrak's negligence played a part in causing his alleged injuries.

In support of their motion, Movants' point to an allegedly similar case against Amtrak in which allegations of negligence based on the failure to slow a train prior to a collision were dismissed on summary judgment by another court in the Eastern District of Louisiana in *Alfaro v. National Railroad Passenger Corporation*.[151] However, *Alfaro* is readily distinguishable from the instant case, because the plaintiff in that case was not an employee of Amtrak. Rather, the plaintiff

---

[148] *See Huffman*, 675 F.3d at 418 (internal citation omitted).

[149] *See* Rec. Doc. 98-2 at 6.

[150] *Id.* at 418 (quoting *CSX Transp., Inc. v. McBride*, 131 S.Ct. 2630, 2644 (2011)) (internal quotation marks omitted) (emphasis added). *See also Rivera*, 378 F.3d at 510 (holding that liability arises under FELA if a railroad's negligence played "any party—however small—in the development of his condition").

[151] No. 10-1912, 2012 WL 12865241, at *1 (E.D. La. Oct. 3, 2012) (Lemmon, J.), *aff'd* 553 F. App'x 446 (5th Cir. 2014).

in *Alfaro* brought a state negligence action against Amtrak on behalf of her children who were occupants of a car struck by an Amtrak train.[152] Thus, the fact that the *Alfaro* court found that Amtrak did not breach a duty to the occupants of the car in that case does not stand for the proposition that Amtrak did not breach a duty to slow the train or issue a warning in the instant action pursuant to FELA. Moreover, the Court notes that in *Alfaro* it appears that the evidence demonstrated that the driver's approach to the crossing indicated that the car would yield to the train but that it then "drove straight into the path of the oncoming train."[153] In the instant case, however, Morgan has pointed to evidence that indicates that the tractor-trailer was fully stopped on the tracks well before the train reached the crossing such that there is a genuine issue of material fact as to whether a reasonably prudent engineer under the circumstances would have issued a warning and would have had time to slow or break the train.

As noted *supra*, the Fifth Circuit has held that the plaintiff's burden of proof in a FELA case is "featherweight" and "a judgment as a matter of law against the plaintiff in a FELA suit is appropriate only when there is a complete absence of probative facts supporting the plaintiff's position."[154] Because Morgan has presented sufficiently probative facts supporting his position that Amtrak was negligent in failing to issue a warning prior to the collision and in failing to slow or stop the train until just one second before impact, the Court finds that there exist genuine issues of material fact to preclude summary judgment on Morgan's FELA claim against Amtrak. Accordingly, the Court hereby denies the motion for summary judgment as to Morgan's FELA claim against Amtrak.

---

[152] *Id.*

[153] *Id.* at *4.

[154] *Rivera*, 378 F.3d at 506 (internal citation omitted).

## 2.  Whether Summary Judgment is Appropriate as to Plaintiff Morgan's Negligence Claim against Illinois Central

In addition to bringing a claim against Amtrak under FELA, Plaintiff Morgan brings a negligence claim against Illinois Central, alleging that Illinois Central was under contract with Amtrak to provide railroad track inspection and maintenance services on the railroad track and crossing where the accident occurred.[155] Movants argue that Morgan has pointed to no evidence of negligence on the part of Illinois Central in his opposition or elsewhere.[156] To prevail on a negligence claim under Mississippi law,[157] a plaintiff must establish by a preponderance of the evidence each of the elements of negligence: duty, breach, causation, and injury.[158] The Court notes that in his opposition to the motion, Morgan states that Illinois Central is an agent of Amtrak and that Illinois Central entered into a contractual agreement to provide railroad track inspection and maintenance services on the railroad track and crossing where the accident and injury occurred.[159] However, Morgan does not raise any arguments or point to evidence regarding any action or inaction on the part of Illinois Central.[160]

As stated *supra*, in satisfying his burden on summary judgment, the non-moving party may

---

[155] Civ. A. No. 16-14393, Rec. Doc. 1 at 4.

[156] Rec. Doc. 98-2 at 16; Rec. Doc. 136 at 9.

[157] The parties do not appear to dispute that Mississippi law applies to the instant case. A federal court sitting in diversity applies the choice of law rules of the forum state. *See Cantu v. Jackson Nat'l Life Ins. Co.*, 579 F.3d 434, 437 (5th Cir. 2009). Pursuant to Louisiana Civil Code Article 3543, "[i]ssues pertaining to standards of conduct and safety are governed by the law of the state in which the conduct that caused the injury occurred, if the injury occurred in that state or in another state whose law did not provide for a higher standard of conduct." Thus, as the parties appear to agree, Mississippi law would apply in this case concerning standards of conduct and safety related to actions that occurred in Mississippi and allegedly caused injury in Mississippi.

[158] *See Miss. Dept. of Mental Health v. Hall*, 936 So.2d 917, 922 (Miss. 2006) (internal citation omitted).

[159] Rec. Doc. 127 at 3.

[160] *See generally id.*

not rest on the pleadings but instead, must point to specific evidence in the record to demonstrate the existence of a genuine dispute of material fact.[161] Thus, the Court finds that Morgan has failed to show the existence of a genuine dispute of material fact as to Illinois Central's alleged negligence. Accordingly, the Court hereby grants the motion for summary judgment to the extent that it requests summary judgment on Morgan's negligence claim against Illinois Central.

### 3. Whether Summary Judgment is Appropriate as to Plaintiff Murphy's Negligence Claim against Amtrak

Plaintiff Murphy, a passenger on the Amtrak train at issue, brings a claim for negligence against Amtrak, alleging that Amtrak failed to warn its passengers of an impending collision, failed to instruct its passengers in reasonably safe procedures to be taken in the event of a collision, failed to provide reasonable assistance to its passengers, and failed to promulgate reasonable policies and procedures to provide for the safe transportation of its passengers.[162] Movants contend that Murphy has no evidence that Amtrak failed to instruct or provide assistance to its passengers or that it failed to promulgate reasonable procedures for the transportation of its passengers.[163] Movants further argue that Murphy has produced no evidence that the accident could have been avoided once Yeates stopped on the tracks in the path of the Amtrak train.[164]

To prevail on a negligence claim under Mississippi law,[165] a plaintiff must establish by a preponderance of the evidence each of the elements of negligence: duty, breach, causation, and

---

[161] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992)); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[162] Civ. A. No. 16-14271, Rec. Doc. 1 at 4.

[163] Rec. Doc. 98-2 at 18.

[164] *Id.*

[165] As noted *supra*, the Court finds and the parties do not appear to dispute that Mississippi law applies to the instant case.

injury.[166] A carrier of passengers is "required to exercise the highest degree of care and diligence for the safety of its passengers" and failure "to exercise this high degree of care is negligence which renders [a carrier of passengers] liable to passengers for injuries resulting therefrom."[167] According to Movants, summary judgment is appropriate on Murphy's claim against Amtrak, because Murphy has produced no evidence to support the required element of breach of the standard of care.[168] However, the Court finds that Murphy has pointed to sufficient evidence in the record to raise genuine disputes of material fact as to whether Amtrak acted negligently with respect to Murphy.

First, Murphy points to the deposition testimony of the Amtrak engineer in which he testified that: he did not see the truck as it approached the crossing, he first noticed the truck when it was already straddling the crossing, and he did not have time to issue a warning.[169] Second, Murphy points to the video recording, which he asserts shows that the engineer did not apply the brakes to the train until one second before the collision despite the fact that the truck was straddling the crossing well before that time.[170] Finally, Murphy points to his own deposition testimony and affidavit in which he asserts that: (1) he was not provided, or made aware of, or given any information or instructions regarding emergency procedures or safety awareness while a passenger aboard the Amtrak train; and (2) he was given no warning of the impending collision.[171]

Murphy also points out that federal regulations require a railroad to have an emergency

---

[166] *See Miss. Dept. of Mental Health v. Hall*, 936 So.2d 917, 922 (Miss. 2006) (internal citation omitted).

[167] *Yazoo & MVR Co. v. Hawkins*, 140 So. 873, 874 (1932). *See also Lambert v. Lott*, 222 So. 2d 816, 818 (Miss. 1969) (holding that a common carrier owes a duty to exercise the highest degree of care and precaution for their safety that is consistent with the "practical conduct of its business").

[168] *See* Rec. Doc. 136 at 4.

[169] Rec. Doc. 129 at 4 (citing Rec. Doc. 129-2 at 2, 3, 4).

[170] *Id.*

[171] *Id.* at 6 (citing Rec. Doc. 129-4 at 2, Rec. Doc. 129-5).

preparedness plan to promote "passenger awareness of emergency procedures, to enable passengers to respond properly during an emergency," and to post emergency instructions in passenger cars and provide safety awareness information through one additional method, *e.g.* on-board announcements or laminated wallet cards.[172] While violations of regulations do not constitute negligence *per se* under Mississippi law, regulations may be considered as a measure of reasonable care consistent with industry standards.[173] Thus, the Court finds that Murphy has pointed to sufficient evidence in the record to create a genuine dispute as to whether Amtrak complied with these federal regulations, and thus whether Amtrak acted with reasonable care consistent with industry standards. Moreover, regardless of the existence of federal regulations, the Court finds that Murphy has pointed to sufficient evidence to create a genuine dispute of material fact as to whether Amtrak breached "the highest degree of care which is owed by a common carrier to its passengers" by failing to brake the train earlier, to issue a warning to Murphy prior to the collision, and to make Murphy aware and provide him with emergency procedures and safety awareness information.[174] Accordingly, because there exist genuine disputes of material fact as to Murphy's negligence claim against Amtrak, the Court hereby denies summary judgment on Murphy's claim against Amtrak.

## IV. Conclusion

Based on the foregoing, the Court finds that there exist genuine issues of material fact with regard to Morgan's claim against Amtrak under FELA. Accordingly, the Court denies summary

---

[172] *See* 49 C.F.R. § 239.101(a)(7)(i), (ii).

[173] *See Accu-Fab & Const., Inc. v. Ladner*, 778 So.2d 766, 771 (Miss. 2001) (overruled on other grounds); *Sumrall v. Miss. Power Co.*, 693 So.2d 359, 367 (Miss. 1997). *See also Mississippi Law of Torts* § 3:12 (2016) (noting that violations of statutes generally constitute negligence as a matter of law, while governmental regulations that have not been given compulsory effect by the legislature do not constitute negligence per se).

[174] *See Lambert v. Lott*, 222 So. 2d 816, 818 (Miss. 1969) (finding it unnecessary to consider whether common carrier's violation of a safety regulation constituted negligence per se because the violation of the safety standard constituted a breach of "the highest degree of care which is owed by a common carrier to its passengers").

judgment on Morgan's claim against Amtrak. The Court finds that Morgan has not pointed to any facts in the record to show that a genuine dispute of material fact exists as to Illinois Central's alleged negligence. Accordingly, the Court grants the motion for summary judgment as to Morgan's negligence claim against Illinois Central. Finally, because genuine disputes of material fact exist as to Murphy's negligence claim against Amtrak, the Court denies summary judgment on Murphy's claim against Amtrak.

Accordingly,

**IT IS HEREBY ORDERED** that Amtrak and Illinois Central's "Motion for Summary Judgment"[175] is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** to the extent that it requests summary judgment on Plaintiff Morgan's claim for negligence against Illinois Central. The motion is **DENIED** to the extent that it requests summary judgment on Plaintiff Morgan's claim for negligence against Amtrak under FELA and Plaintiff Murphy's claim for negligence against Amtrak.

**NEW ORLEANS, LOUISIANA**, this __12th__ day of May, 2017.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[175] Rec. Doc. 98.